UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ROBERT TERRY, CREST CORPORATION, and CREST IRREVOCABLE BUSINESS TRUST DBA FREEDOM MEDIA,<br><br>         Plaintiffs,<br><br>    v.<br><br>REGISTER TAPES UNLIMITED, INC.; EDWARD "DOUG" ENDSLEY; ASHLEY MATE; and DOES 1 through 50, inclusive,<br><br>         Defendants. | CIV. NO. 2:16-00806 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

Plaintiffs Robert Terry, Crest Corporation, and Crest Irrevocable Business Trust DBA Freedom Media brought this breach of contract and disability discrimination, retaliation, and harassment case against defendants Register Tapes Unlimited, Inc. ("RTUI"), Edward "Doug" Endsley, and Ashley Mate. Endsley and Mate now move to dismiss Terry's harassment and hostile work environment claim for failure to state a claim upon which relief

1

can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.   Factual and Procedural Background

RTUI is a Texas corporation that sells pre-printed advertising space on the back of receipt tapes at grocery stores. (First Am. Compl. ("FAC") ¶¶ 4, 14 (Docket No. 6).)  Endsley is RTUI's President and Mate is its Chief Operations Officer and both live and work in Texas. (Id. ¶¶ 5-6.)  Terry worked as a sales manager for RTUI in the Sacramento region and is the sole owner of Crest Corporation and Crest Irrevocable Business Trust DBA Freedom Media. (Id. ¶¶ 2-3.)  Because the pending motion to dismiss is limited to Terry's harassment and hostile work environment claim against Endsley and Mate, the court will limit its discussion to the allegations relevant to that claim and all references to "plaintiff" are to Terry only.

In October 2010, plaintiff suffered a traumatic brain injury from an automobile accident in Alaska while working for RTUI. (Id. ¶ 29.)  Plaintiff informed RTUI that the brain injury reduced his mental capacity, diminished his memory and processing speed, and required an accommodation. (Id. ¶ 31.)  Plaintiff also experienced migraine headaches, low energy, fatigue, and a reduced ability to work for extended periods as a result of the accident. (Id. ¶ 29.)

In 2013, RTUI allegedly demoted plaintiff and took away "the choicest stores in his Sacramento-area territory" and assigned those stores to another sales manager. (Id. ¶ 32.)  Endsley allegedly "blasted" plaintiff for the reduction in his sales and threatened to further decrease his sales territory even

though he allegedly knew that plaintiff's reduced sales were because of plaintiff's disability.  (Id. ¶ 33.)  Endsley also allegedly falsely accused plaintiff of stealing another sales manager's accounts and took away commissions plaintiff should have received from those accounts.  (Id. ¶ 34.)

In March 2014, Mate rejected a ten-year advertising contract that plaintiff sold and told plaintiff that a contract in excess of three years was against company policy even though RTUI allegedly lacked a company policy limiting the duration of a sales contract and other sales managers had entered into contracts for longer than three years.  (Id. ¶ 36.)  In about May 2014, Mate "failed to protect Plaintiff's interests in his accounts with RTUI" when he failed to send an email informing other sales managers that a certain account belonged to plaintiff.  (Id. ¶ 37.)  While plaintiff was on medical leaves of absences, Mate also allegedly instructed other RTUI employees to contact plaintiff with work-related issues.  (Id. ¶ 40.)

After amending the Complaint once as a matter of course, plaintiffs assert ten claims in the FAC: (1) breach of contract against RTUI; (2) breach of the implied covenant of good faith and fair dealing against RTUI; (3) disability discrimination in violation of subsection 12940(a) of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940-12951, against RTUI; (4) failure to engage in the interactive process in violation of subsection 12940(n) of FEHA against RTUI; (5) failure to accommodate in violation of subsection 12926(m)(1) of FEHA against RTUI; (6) retaliation in violation of subsection 12940(h) of FEHA against RTUI; (7)

harassment and hostile work environment based on disability in violation of subsection 12940(j)(1) of FEHA against RTUI, Endsley, and Mate; (8) failure to prevent discrimination, harassment, and retaliation in violation of subsection 12940(k) of FEHA against RTUI; (9) wrongful adverse action in violation of public policy against RTUI; and (10) failure to pay wages against RTUI.  This Order is limited to Endsley and Mate's motion to dismiss plaintiff's harassment and hostile work environment claim for failure to state a claim upon which relief can be granted.

II. Analysis

On a motion to dismiss under Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions . . . ."  Twombly, 550 U.S. at 555 (alteration in original) (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 556 U.S. at 678.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

FEHA makes it unlawful for "an employer . . . or any other person, because of . . . disability . . . to harass an employee." Cal. Gov't Code § 12940(j)(1). To establish a prima facie case for a harassment and hostile work environment claim under FEHA, the plaintiff must show he was subjected to conduct or comments that were "(1) unwelcome; (2) because of [his disability]; and (3) sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." Lyle v. Warner Bros. Television Prods., 38 Cal. 4th 264, 279 (2006) (internal quotation marks and citations omitted). "'[M]erely offensive' comments in the workplace are not actionable," because the conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment." Id. at 283; see also id. at 284 ("To be actionable, [an] objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." (internal quotation marks and

5

citation omitted)).

In Reno v. Baird, the California Supreme Court distinguished between the type of conduct that constitutes harassment for which an individual employee could be personally liable from the type of conduct that constitutes discrimination or retaliation for which only the employer could be liable. 18 Cal. 4th 640 (1998); see also Jones v. Lodge at Torrey Pines P'ship, 42 Cal. 4th 1158, 1173 (2008) (holding that only the employer can be liable for retaliation under FEHA). Harassment "consists of a type of conduct not necessary for performance of a supervisory job" and is "presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." Reno, 18 Cal. 4th at 645-46 (internal quotation marks and citation omitted). The use of "slurs or derogatory drawings, [] physically interfer[ing] with freedom of movement, [and] engag[ing] in unwanted sexual advances" are examples of conduct that is "avoidable and unnecessary to job performance" and could amount to harassment. Id. at 646 (internal quotation marks and citation omitted).

On the other hand, "[m]aking a personnel decision is conduct of a type fundamentally different from the type of conduct that constitutes harassment" and may give rise to only a discrimination claim against the employer. Id. (internal quotation marks and citation omitted). Under this limitation, "commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of

1  supervisory functions, deciding who will and who will not attend
2  meetings, deciding who will be laid off, and the like, do not
3  come within the meaning of harassment." Id. at 646-47 (internal
4  quotation marks and citation omitted).  Because making "personnel
5  decisions is an inherent and unavoidable part of the supervisory
6  function," even if the actions are retrospectively found to be
7  discriminatory, FEHA limits recourse to a discrimination claim
8  against the employer, in part because a supervisor cannot perform
9  his job and "refrain from engaging in the type of conduct which
10 could later give rise to a discrimination claim." Id. (internal
11 quotation marks and citation omitted).
12         Here, all of plaintiff's factual allegations about
13 Endsley and Mate's conduct involve necessary personnel decisions
14 and cannot constitute harassment under FEHA as a matter of law.
15 Plaintiff has alleged only that he was demoted and lost his best
16 accounts, (FAC ¶ 32); Endsley "blasted" him for his declining
17 sales, threatened to further decrease his sales territory, and
18 took away plaintiff's commissions based on a false accusation
19 that plaintiff had stolen another sales manager's account, (id.
20 ¶ 33); and Mate rejected the duration of a contract plaintiff
21 sold based on a non-existent policy, failed to protect one of
22 plaintiff's accounts, and had other employees contact plaintiff
23 while he was on medical leave for work-related issues, (id.
24 ¶ 36).  Even assuming Endsley and Mate made these decisions
25 because of plaintiff's disability, all of the decisions were
26 necessary personnel decisions and plaintiff's remedy is limited
27 to a discrimination claim against his employer. Accord Allford
28 v. Barton, No. 1:14-CV-00024 AWI, 2015 WL 2455138, at *19 (E.D.

Cal. May 22, 2015) (citing cases dismissing FEHA harassment claims based on allegations that a supervisor reprimanded employee, monitored when employee arrived and what employee did during workday, and threatened employee with termination if employee did not return to work).

        IT IS THEREFORE ORDERED that Endsley and Mate's motion to dismiss Terry's harassment and hostile work environment claim be, and the same hereby is, GRANTED.

        Plaintiffs have twenty days from the date this Order is signed to file a Second Amended Complaint, if they can do so consistent with this Order.

Dated: August 8, 2016

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE