UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT TERRY, et al., | No. 2:16-cv-0806-WBS-AC |
| Plaintiffs, | |
| v. | ORDER |
| REGISTER TAPES UNLIMITED, INC., et al., | |
| Defendants. | |

This matter is before the court pursuant to Local Rule ("LR") 301(c)(1), on plaintiffs' ("Terry's") motion to compel, ECF No. 47, which is supported by various exhibits and declarations. Defendant ("RTUI") submitted a response indicating declarations would be filed separately. ECF No. 48 at 1. Several days later, RTUI filed an amended opposition with the attached declaration. ECF No. 49. Terry filed a reply, objecting to the timeliness of RTUI's response. ECF No. 50. The motion was heard on July 26, 2017. ECF No. 51.

As a preliminary matter, this motion was improperly submitted by Terry on a shortened calendar. Pursuant to Local Rule 251, the motion should have been submitted through the joint statement process. In the interest of efficiency, the court proceeded with the matter, but the parties are cautioned to follow the procedure set forth by the Local Rules for any future filings. Because this motion was improperly noticed, the court rejects plaintiff's objections based on timeliness, and proceeds to the substance of the motion.

## I.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

This matter was removed from California State Court on the basis of diversity and federal question jurisdiction on April 19, 2016.  ECF No. 1.  On May 16, 2017, Terry filed a Second Amended Complaint ("SAC"), leaving only state claims.  ECF No. 36.  The SAC is the operative complaint in this matter.  According to the SAC, Terry was, at all relevant times, an employee of RTUI and a citizen of California.  ECF No. 36 at 2.  RTUI is allegedly a Texas corporation engaged in the business of selling advertising space on grocery store receipts to businesses in Texas and California.  Id. at 2, 4-5.

From 1998 to 2004, Terry alleges to have entered into contracts with RTUI to sell advertising space on RTUI's behalf, negotiate grocery store servicing contracts on RTUI's behalf, assign grocery store servicing contracts he had previously obtained to RTUI, and provide sales training to RTUI staff.  Id. at 5-7.  The contracts between the parties allegedly provide that RTUI would pay plaintiff various percentages of its revenues as compensation for his services and assignment of contracts.  Id.  At issue in this case are contracts with grocery stores HOWES and Safeway.  Id. at 7.  Plaintiff alleges he has not been properly compensated under the contracts, and that RTUI has regularly failed to provide proof of profits necessary for plaintiff to ascertain whether proper payments have been made.  Id. at 7.  As recently as 2013, plaintiff asked RTUI to pay him what he was owed on the Safeway agreement, and RTUI allegedly refused.  Id. at 8.

Plaintiff also alleges that he has been an employee of RTUI and has been the victim of discrimination since sustaining a traumatic brain injury in 2010.  Id. at 9-12.  Related to these claims, plaintiff alleges that on September 15, 2014, RTUI's HR director William Krocak erroneously sent plaintiff an e-mail intended for and addressed to RTUI's attorney, "Dave."  This email quoted RTUI's CEO Edward Endsley asking Krocak and the attorney to "figure out how to get rid of [plaintiff] without being sued.'"  Id. at 11, ¶ 37.  RTUI asserts that Terry was aware that "Dave" was RTUI's attorney because Terry had filed a claim with the California Labor Commissioner in November of 2013 and RTUI's attorney, Dave, attended the "claim and conference" meeting and introduced himself to Mr. Terry as RTUI's attorney.  ECF No. 48 at 5. Less than an hour after the September 2014 email was sent, Krocak sent a second e-mail to Terry,

stating that Terry had received an e-mail to which attorney-client privilege applied. ECF 47-1 at 4. The second e-mail did not specifically reference the first. Id.

The parties have been engaging in discovery. Defendants have objected to questions regarding the Krocak email in the depositions of both Mr. Krocak and Mr. Endsley on the grounds of attorney-client privilege. ECF No. 48 at 2. RTUI has also objected to all forms of discovery related to post-2003 communications with Safeway. At Endsley's May 2017 deposition, he was asked, "And what were the circumstances surrounding RTUI getting the Safeway agreement back?" and "Did you go after Safeway, or did they come back to you?" ECF No. 47-2 at ¶ 5. Endsley refused to answer both questions on the grounds of trade secret privilege and relevance. Id., ECF No. 47-6, 218:17-219:12. On the same grounds, defendant refused to produce documents related to its post-2003 communications with Safeway, instead responding to several requests for production ("RFP" Nos. 38, 44, 54-64, 75-79, 83-87, 88-91, 92-119) with only pre-2003 documents, if anything. ECF No. 47-1 at 4, 47-5. Despite RTUI's numerous assertions of privilege, and Terry's repeated requests, no privilege log was produced in this matter as of the hearing date. ECF No. 47-1 at 4-5. There is no standing protective order in this case.

On July 11, 2017 the parties filed a stipulation to extend discovery deadlines. ECF No. 45. In this stipulation, the parties stated that they "have been engaged in and attempting to informally resolve a discovery dispute (Defendants assert that certain testimony and documents are protected by trade secret and the attorney-client privilege)" but that "despite the Parties' meet and confer efforts, Plaintiff anticipates that a motion to compel may be required to fully resolve certain discovery issues[.]" Id. at 3. An extension of time was granted by District Judge William B. Shubb on July 11, 2017, and entered into the docket on July 12, 2017. ECF No. 46. Later on July 12, 2017, plaintiff filed the motion at bar. ECF No. 47.

## II.    THE MOTION

Plaintiff makes three assertions in the motion to compel: (1) plaintiff is entitled to defendant's testimony regarding an inadvertently disclosed pre-litigation e-mail sent by defendant's agent directly to plaintiff describing defendant's attempts to fire him; (2) plaintiff is entitled to discovery as to defendant's communications with Safeway after 2003; and (3) plaintiff

1   is entitled to a privilege log describing all post-2003 documents regarding communications

2   between Safeway and defendants.  ECF No. 47-1 at 1-2.

3                                    **III.    ANALYSIS**

4       A.  Application Of Attorney-Client Privilege to E-Mail

5       Plaintiff is not entitled to discovery regarding defendant's inadvertently disclosed email.

6   Federal Rule of Evidence 501 states that "in a civil case, state law governs privilege regarding a

7   claim or defense for which state law supplies the rule of decision."  See, e.g., Davis v. Leal,

8   43 F. Supp. 2d 1102, 1108 (E.D. Cal. 1999).  The California Evidence Code protects attorney-

9   client privileged materials. Cal. Evid. Code, §§ 952, 954.  However, Cal. Evid. Code § 912,

10  subdivision (a) provides that "... the right of any person to claim a privilege provided by Section

11  954 (lawyer-client privilege) ... is waived with respect to a communication protected by such

12  privilege if any holder of the privilege, without coercion, has disclosed a significant part of the

13  communication or has consented to such disclosure made by anyone.  Consent to disclosure is

14  manifested by any statement or other conduct of the holder of the privilege indicating consent to

15  the disclosure, including failure to claim the privilege in any proceeding in which the holder has

16  the legal standing and opportunity to claim the privilege."

17      Although this language exists in the Code, California courts have made very clear "that

18  'waiver' does not include accidental, inadvertent disclosure of privileged information by the

19  attorney."  State Comp. Ins. Fund v. WPS, Inc., 70 Cal. App. 4th 644, 654 (1999).  The California

20  Supreme Court has extended this waiver exception to inadvertent disclosures made by the

21  privilege-holding client.  Ardon v. City of Los Angeles, 62 Cal. 4th 1176, 1188 (2016) ("To be

22  sure, the holding in State Fund was limited to the situation in which the attorney, rather than the

23  client as the holder of the privilege, inadvertently discloses privileged material. But in repudiating

24  the '"gotcha" theory of waiver, in which an underling's slip-up in a document production

25  becomes the equivalent of actual consent,' the court recognized that the disclosure contemplated

26  in Evidence Code section 912 involves some measure of choice and deliberation on the part of the

27  privilege holder.")  The inadvertence exception to waiver applies to disclosures that took place

28  /////

                                             4

prior to the commencement of litigation.  <u>McDermott Will & Emery LLP v. Superior Court</u>, 10 Cal. App. 5th 1083, 1109 (2017).

Because the e-mail at issue apparently relates to plaintiff's state law employment claims (SAC at ¶ 49-89), and the operative SAC contains only state law claims, state privilege law governs here.  Plaintiff argues in his motion that he is entitled to discovery on the inadvertently disclosed e-mail because privilege was waived by the disclosure, but he does not address the inadvertence exception.  ECF No. 47-1 at 5-6.  The inadvertent disclosure exception to waiver applies to the e-mail at issue.  Plaintiff relies on <u>Continental Casualty Co. v. St. Paul Surplus Lines Ins. Co.</u>, 265 F.R.D. 510 (E.D. Cal. 2010), for the proposition that privilege is waived when communications are sent to a third party.  ECF No. 47-1 at 7.  However, <u>Continental</u> does not address inadvertence at all.  Further, <u>Continental</u> is factually distinct from the case at bar, in that it deals with disclosure to a party's insurer.  265 F.R.D. at 527.  Accordingly, <u>Continental</u> is inapplicable here; the California case law on inadvertence controls.

Though plaintiff does not make any argument directly related to inadvertent disclosure under California evidence rules, he argues that even if the Federal Rules of Evidence apply, the federal inadvertent disclosure exception to waiver does not apply because the e-mail was sent directly to plaintiff, and it was not clear from the e-mail itself that it was intended for defendant's attorney.  <u>Id.</u> at 6-7.  This argument is disingenuous.  Plaintiff's SAC itself acknowledges that the e-mail was "erroneously sent" to plaintiff and was "intended for RTUI's attorney."  ECF No. 36 at 11.  Plaintiff acknowledges that after he received the e-mail, he received another e-mail from the same sender notifying him that an attorney-client privileged email was previously sent to him in error.  Dkt. No. 47-1 at 5.  Although defendant's claw-back of the e-mail could have been clearer, it is highly unlikely that plaintiff did not know which e-mail defendant intended to retract.  The inadvertent disclosure exception to waiver applies to the e-mail in question, and plaintiff's motion to compel is DENIED as to testimony related to the email.

B.  <u>Discoverability of Post-2003 Communications with Safeway</u>

Plaintiff is entitled to limited discovery on post-2003 communications between defendant and Safeway because trade secret privilege has not been established, and because certain

communications are relevant to the claims and defenses in this matter. In general, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," unless otherwise limited by court order. Fed. R. Civ. P. 26(b)(1). The California Evidence Code protects trade secrets, stating that "the owner of a trade secret has a privilege to refuse to disclose the secret, and to prevent another from disclosing it, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." Cal. Evid. Code § 1060 (West).

"Allowance of the trade secret privilege may not be deemed to 'work injustice' within the meaning of Evidence Code section 1060 simply because it would protect information generally relevant to the subject matter of an action or helpful to preparation of a case." Bridgestone/Firestone, Inc. v. Superior Court, 7 Cal. App. 4th 1384 (1992), reh'g denied and opinion modified (July 23, 1992). Instead, "a court is required to order disclosure of a trade secret unless, after balancing the interests of both sides, it concludes that under the particular circumstances of the case, no fraud or injustice would result from denying disclosure. What is more, in the balancing process the court must necessarily consider the protection afforded the holder of the privilege by a protective order as well as any less intrusive alternatives to disclosure proposed by the parties." Id. at 1393. The party asserting trade secret privilege has the initial burden of establishing its existence, and thereafter the party seeking discovery must make a "prima facie, particularized showing" that the information is necessary to prove or defend against a "material element of one or more causes of action in the case, and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit." Id. If this showing is made, the privilege holder must demonstrate any claimed disadvantages of a protective order. Id. "Either party may propose or oppose less intrusive alternatives to disclosure of the trade secret, but the burden is upon the trade secret claimant to demonstrate that an alternative to disclosure will not be unduly burdensome to the opposing side and that it will maintain the same fair balance in the litigation that would have been achieved by disclosure." Id.

Defendant has not met its initial burden of demonstrating a trade secret exists; it is not enough to simply make the blanket, conclusory assertion that all post-2003 communications are

subject to trade secret protection.  ECF No. 48 at 6.  As RTUI confirmed at the hearing on this matter, their primary objection can more accurately be described as a general relevance argument.  Id. at 6-7.  Plaintiff asserts that the post-2003 communications are necessary to gather relevant information about the breakdown and subsequent rehabilitation of the Safeway-RTUI relationship, as this information is related to profits post-2003 and plaintiff's potential entitlement thereto.  ECF No. 47-1.  Defendant contends that, though it did rehabilitate its relationship with Safeway in 2009, plaintiff is only entitled to profits from the contract that ended in 2003, and is not entitled to profits under the later contract.  ECF No. 48 at 7.  Based on an evaluation of the SAC and all arguments presented on this matter, the court has determined that certain limited information regarding the post-2003 relationship between RTUI and Safeway is potentially at issue in this case, and is relevant such that plaintiff is entitled to discovery.

Although some portions of post-2003 communications are relevant to this case, Terry's requests are overbroad.  Numerous RFPs seek documents related to business transactions having nothing to do with register tape.  See, e.g., RFPs 92-119 at ECF No. 47-5.  Terry is entitled only to information related to his potential damages post-2003 (including information related to gross profits, losses, costs, and commissions), information related to negotiations and contractual agreements as to register tapes between Safeway and RTUI post-2003, and information indicating that RTUI was improperly withholding information related to Terry's contractual rights from Terry after 2003.  Specifically, RTUI must respond to RFP Nos. 38, 44, 54-64, and 88-91.  RTUI need not respond to overbroad, irrelevant requests, including RFPs 75-79, 83-87, and 92-119.  Thus, Plaintiff's motion on this point is GRANTED IN PART.

C.  Privilege Log for Withheld Post-2003 Communications with Safeway

Plaintiff is entitled to a privilege log recording all discoverable documents withheld due to a claim of privilege.  The Federal Rules of Civil Procedure require that a party withholding otherwise discoverable information based on a claim of privilege expressly make the claim and describe the nature of the information not disclosed such that the other party will be able to assess the privilege claim.  Fed. R. Civ. P. 26(b)(5)(A).  "The party asserting the privilege bears the burden of establishing all necessary elements."  Apple Inc. v. Samsung Elecs. Co., 306 F.R.D.

234, 237 (N.D. Cal. 2015).  The asserting party must produce a privilege log, and failure to do so may result in a waiver of privilege.  Id.  Defendant has made no argument as to why it should be exempted from its responsibility, as the asserting party, to produce a privilege log.  Plaintiff's motion to compel defendant to produce a privilege log for all documents withheld on assertion of privilege is GRANTED.

### D.  Preventing Further Discovery Disputes

As discussed in the hearing on this matter, the court is available telephonically to address simple and discrete discovery disputes.  The procedures for utilizing this resource can be found on the court's website, at http://www.caed.uscourts.gov/caednew/index.cfm/judges/all-judges/united-states-magistrate-judge-allison-claire-ac/.

The parties appear to be in agreement that discovery in this case is likely to involve sensitive and confidential (if not privileged) business information.  The parties represent that they have already agreed a protective order would be appropriate, but have yet to submit a stipulated order to the court.  ECF No. 48 at 8.  There is currently no protective order on file in this case.  Because it is relatively clear that confidentiality concerns will be an ongoing issue in this case, the court finds a protective order is necessary for the parties to effectively move forward with discovery.  The parties are therefore required to submit a stipulated protective order that complies with Local Rule 141.1 within 14 days from the date of this order.

## IV.  CONCLUSION

Accordingly, it is HEREBY ORDERED as follows:

1.  Plaintiff's motion to compel discovery, ECF No. 47, is GRANTED IN PART AND DENIED IN PART  as follows:

    a.  DENIED as to information related to the inadvertently disclosed email;

    b.  GRANTED as to RFP Nos. 38, 44, 54-64, and 88-91 regarding post-2003 communications between RTUI and Safeway;

    c.  Otherwise DENIED as to post-2003 communications between RTUI and Safeway;

    d.  GRANTED to the extent that defendants shall, if they wish to assert trade secret privilege in conjunction with their responses to the discovery ordered regarding to

/////

post-2003 communications between RTUI and Safeway, produce a privilege log that conforms to the requirements of the Federal Rules of Civil Procedure;

2. The parties shall file a stipulated protective order that complies with Local Rule 141.1 within 14 days of the date of this order; and

3. The parties shall bear their own costs related to this discovery dispute.

DATED: July 28, 2017.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE