UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT TERRY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>REGISTER TAPES UNLIMITED, INC., a Texas corporation, et al.,<br><br>Defendants. | No. 2:16-cv-0806-WBS-AC<br><br><br>ORDER |

This matter is before the court on plaintiff's ("Terry") motion for sanctions and to enforce discovery order. ECF No. 60. Defendant ("RTUI") submitted a response, ECF No. 61, and plaintiff replied, ECF No. 63. The matter was heard in open court on March 21, 2018, with all parties present. ECF No. 64.

**I.      RELEVANT FACTUAL AND PROCEDURAL HISTORY**

This matter was removed from California State Court on the basis of diversity and federal question jurisdiction on April 19, 2016. ECF No. 1. On May 16, 2017, Terry filed a Second Amended Complaint ("SAC"). ECF No. 36. The SAC is the operative complaint in this matter. According to the SAC, Terry was, at all relevant times, an employee of RTUI and a citizen of California. ECF No. 36 at 2. RTUI is a Texas corporation engaged in the business of selling advertising space on grocery store receipts to businesses in Texas and California. Id. at 2, 4-5.

1

From 1998 to 2004, Terry alleges to have entered into contracts with RTUI to sell advertising space on RTUI's behalf, negotiate grocery store servicing contracts on RTUI's behalf, assign grocery store servicing contracts he had previously obtained to RTUI, and provide sales training to RTUI staff. Id. at 5-7. The contracts between the parties allegedly provide that RTUI would pay plaintiff various percentages of its revenues as compensation for his services and assignment of contracts. Id. At issue in this case are contracts with grocery stores HOWES and Safeway. Id. at 7. Plaintiff has allegedly provided services pursuant to his contracts with RTUI from 1998 to the present time. Id. at 5-12

Plaintiff alleges he has not been properly compensated under the contracts, and that RTUI has regularly failed to provide proof of profits necessary for plaintiff to ascertain whether proper payments have been made. Id. at 7. As recently as 2013, plaintiff asked RTUI to pay him what he was owed on the Safeway agreement, and RTUI allegedly refused, in breach of the agreement. Id. at 8.

On July 31, 2017 the undersigned issued an order on a motion to compel filed by plaintiff. ECF No. 52. In that motion, in relevant part, plaintiff claimed that he was entitled to discovery as to defendant's communications with Safeway after 2003, discovery as to financial statements (including gross profits), and that he was entitled to a privilege log describing all responsive documents withheld as privileged. ECF No. 47-1 at 1-2. The undersigned ruled largely in plaintiff's favor on each of these points. On the first point, the undersigned rejected defendant's trade secret privilege argument and held that plaintiff is entitled

> to information related to his potential damages post-2003 (including information related to gross profits, losses, costs, and commissions), information related to negotiations and contractual agreements as to register tapes between Safeway and RTUI post-2003, and information indicating that RTUI was improperly withholding information related to Terry's contractual rights from Terry after 2003. Specifically, [the undersigned held that] RTUI must respond to RFP Nos. 38, 44, 54-64, and 88-91.

ECF No. 52 at 7. The undersigned further ordered that defendant must produce a privilege log accounting for all documents withheld on assertion of privilege. Id. at 8. The court directed the parties to file a stipulated protective order to address defendant's privacy concerns. Id. at 9.

2

The parties filed a stipulated protective order (ECF No. 53) and that order was approved on August 17, 2017. ECF No. 54. Pursuant to the parties' stipulation, District Judge Shubb ordered an extension of the discovery deadline in this case to September 7, 2018. ECF No. 56. On January 5, 2018, the parties requested an informal telephonic discovery conference. ECF No. 57. On January 11, 2018, the undersigned held the telephonic conference, during which defendant requested additional time to make the production required by this court's July 31, 2017 order. ECF No. 59. The court granted defendant an extension to February 2, 2018, without prejudice to any motion by plaintiff if full production was not completed by that date. Id. Plaintiff filed the motion at bar on February 20, 2018. ECF No. 60.

## II. THE CLAIMS

Plaintiff makes three main assertions in his motion for sanctions: (1) defendant failed to produce documents by the February 2, 2018 deadline; (2) defendant made an incomplete production;[1] and (3) defendant produced an inadequate privilege log and continues to withhold certain documents as privileged in contravention of the court's order. ECF No. 60-1 at 4-6. Plaintiff seeks monetary sanctions in the amount of $10,875 to cover attorneys' fees expended in discovery disputes in this case. Plaintiff also seeks sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A), in which the court deems certain facts at issue in this case admitted. Id. at 9.[2]

## III. ANALYSIS

A. Defendant's Production Was Late

The parties do not dispute that defendant's production was mailed February 5, 2018, three days after the production deadline of February 2, 2018. ECF No. 61 at 8, ECF No. 60-1 at 2.

---

[1] Plaintiff actually makes two arguments on this point: (1) that defendant produced very few responsive documents, none of which contained gross profits and very few of which related to the period between 2002 to 2009, and (2) that the size of defendant's production is not aligned with representations defendant has made to the court regarding the volume of documents at issue. Because these arguments reach the same ultimate issue, they are addressed together.

[2] Defendant, in its response, contends that plaintiff violated the stipulated protective order by filing documents marked confidential with this court without asking the court to file the documents under seal. ECF No. 61 at 9-10. Defendant does not seek specific sanctions. There being no motion before the court, the undersigned declines to address the issue. However, all parties are strongly admonished to comply with the terms of the stipulated protective order.

3

Defendant's only excuse for its untimeliness is that it was delayed by technical difficulties in using Dropbox. ECF No. 61 at 7. Defendant further argues that regardless of the cause, the delay was minimal and thus caused no harm.

The February 2, 2018 production deadline was an extension given by this court, in part due to defendant's claims of difficulties with technology. ECF No. 59. Defendant had multiple options in delivering the documents to plaintiff; in fact, an email from plaintiff dated December 26, 2017, clearly stated that "if connecting via technology was proving too difficult [they] would gladly accept hard copies in paper or CD form." ECF No. 60-9 at 3. It was defendant's obligation, not plaintiff's, to determine a mechanism to timely comply with its own discovery obligations.

While defendant is correct that February 5, 2018 is only a few days after February 2, 2018, the court is inclined to enforce its own deadlines. This is especially true in light of the multiple discovery delays in this case and the fact that the February 2, 2018 date already reflected an extension of time. Defendant's failure to make its production by the deadline is a violation of a court order and is therefore sanctionable. Local Civil Rule 110. Were this defendant's only violation, an admonition might suffice. It is not the only violation, however.

B. <u>Defendant Has Not Established That It Has Made a Full Production</u>

Defendant's production of fewer than 1,000 documents since the July 2017 order, in which the word "Safeway" appeared only 50 times, appears to be less than a full production in light of defendant's previous assertions that document review required culling through tens of thousands of documents. ECF No. 60-2 at 4. As discussed further below, it is clear that defendant withheld some documents (specifically financial and contract negotiation and agreement documents) that the court has previously ordered produced. ECF No. 52 at 7.

Aside from issues of privilege discussed further below, the volume produced by defendant appears inadequate, and defendant stated in court that a signed verification stating that the production was full and complete has not been provided. Without a sworn statement from defendant that no other responsive documents actually exist, defendant's production appears to be inadequate. At defendant's next production, which will be directed by this order and must be full

and complete, defendant must submit a signed verification that the production is, in fact, full and complete.

### C. Defendant's Assertions Of Privilege Are Deficient

#### A. Trade Secret Privilege

This court has already overruled defendant's categorical assertion of trade secret privilege as to the financial information in dispute and as to documentation of negotiations and contractual agreements between Safeway and RTUI. ECF No. 52. The court ordered production of these documents. Id. Pursuant to the order of July 31, 2017, defendant was free to submit a privilege log of specific documents that were nonetheless being withheld for reasons other than a blanket assertion that the financial records and contract-related documents inherently constitute trade secrets. Id. at 7-8. The final two entries of defendant's privilege log essentially recapitulate the previously rejected blanket assertion that these categories of documents may be withheld as trade secrets.[3] These documents have been withheld in violation of court order.

In opposition to plaintiff's motion, defendant argues that the documents related to negotiations between RTUI and Safeway are "very closely held and not disclosed to outsiders." ECF No. 61 at 6. Counsel reiterated this position at the hearing. However, this is not a legitimate basis for non-disclosure. First, it amounts to a restatement of the previously-rejected categorical assertion of trade secret privilege. Second, to the extent it is a distinct argument, it is confidentiality concern that is properly managed by the protective order in place in this case.

The court also agrees with plaintiff that the privilege log is generally inadequate. Descriptions of allegedly privileged documents in a privilege log must "enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). The Ninth Circuit has made clear that "a proper assertion of privilege must be more specific than a generalized, boilerplate objection." Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for

---

[3] The privilege log identifies the following documents as privileged pursuant to "Trade Secret/Privacy/Relevance": (1) "All monthly, quarter and annual financial reports and statements, audited and unaudited and all related communications […]" from 1989 to present, and (2) "All contracts, correspondence, negotiating notes, proposals, modifications and related documents regarding Safeway register tape not otherwise identified herein," from 2008 to present. ECF No. 60-11 at 10.

Dist. of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005).  The Ninth Circuit has found a privilege log which contains the following information to be sufficient: "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." In re Grand Jury Investigation, 974 F.2d 1068, 1070–71 (9th Cir.1992) (citing Dole v. Milonas, 889 F.2d 885, 888 n.3 (9th Cir. 1989)).

With the exception of the final two entries, which globally identify large classes of documents, the privilege log does identify individual documents by type, date, sender and recipient.  However, while the document descriptions might be specific enough for identification purposes, they are not sufficient to "enable other parties to assess the applicability of the privilege or protection" as required by Rule 26(b)(5).  For example, the first document listed is described as "Correspondence re: Safeway blank tape."  ECF No. 60-11 at 1.  This description might be useful in distinguishing the email so identified from other emails sent the same date by the same person to the same recipients, but it does not give the undersigned any indication whether or how a trade secret might be involved.  Some descriptions are so vague as to be meaningless.  See ECF No. 60-11 at 9 ("Correspondence re: Colorado" and "Correspondence re: For Doug").

One problem is that the claim of privilege attached to every single document, save one claim of attorney/client privilege, is "Trade Secret/Privacy/Relevance."  Neither privacy concerns nor disputed relevance provides a privilege.  Moreover, the undersigned has already found that plaintiff's RFP Nos. 38, 44, 54-64 and 88-91 seek relevant information and that defendant's legitimate privacy concerns are adequately addressed by a protective order.  Assuming that defendant contends each individual document identified in the privilege log includes trade secrets that cannot be redacted, it is impossible to determine from the log how that might be so.

The privilege log does not provide information that would support a determination that trade secret protection actually applies to any particular document.  The party asserting privilege bears the burden of proving the applicability of the privilege or protection to a given document.
/////

See, e.g., In re Grand Jury Investigation, 974 F.2d at 1070. Defendant's privilege log, as it stands, does not come close to meeting its burden.

Defendant's privilege log does not comply with the discovery rules or the law of this Circuit. Because defendant has not met its initial burden of establishing the existence of trade secret privilege, see Bridgestone/Firestone, Inc. v. Superior Court, 7 Cal. App. 4th 1384, 1393 (1992)[4], the assertions of privilege are overruled. The court notes that this is the second round of litigation necessitated by defendant's general contention that its financial records and contractual relationships are protected from discovery as trade secrets. Prior to plaintiff's motion to compel, defendant had not even attempted to produce a privilege log but had simply refused to produce responsive documents pursuant to a blanket claim of privilege. Now that it has produced a privilege log under court order, defendant has made no greater showing of entitlement to trade secret protection than it did in opposition to the motion to compel. Accordingly, the court finds that defendant is not entitled to the limited protections provided by Cal. Evid. Code § 1060. The protective order in place in this case is sufficient to protect the confidentiality of defendant's business processes.

B. Attorney-Client Privilege

The privilege log also asserts attorney-client privilege as to a category of individually unspecified communications between RTUI and its lawyers regarding plaintiff and/or Safeway. ECF No. 60-11 at 10. Unlike the conditional protections provided to trade secrets, confidential attorney-client communications are granted a broad and absolute privilege from disclosure. See DP Pham LLC v. Cheadle, 246 Cal. App. 4th 653 (2016).

Because the privilege log fails to provide the information needed to determine whether the privilege applies to any particular communication (or even to the class of communications identified), it fails to satisfy Rule 26(b)(5). As to this class of documents, defendant will be provided the opportunity to submit a revised privilege log to plaintiff. The revised privilege log must comply with Rule 26(b)(5) and, together with any supporting declaration, provide the

---

[4] State law governs assertions of privilege here, because plaintiff's claims are substantively governed by state law. Davis v. Leal, 43 F. Supp. 2d 1102, 1108 (E.D. Cal. 1999).

information necessary to make a prima facie showing that any withheld documents constitute confidential attorney-client communications: identification of the communication by type and date; the identities of all parties to the communication; and the existence of an attorney-client relationship between the parties to the communication. Id. at 665. Assuming this showing is made, the court will uphold the assertion of privilege regardless of the content of the document(s) unless plaintiff demonstrates, on a motion to compel, that a particular communication was not confidential or the privilege was waived or otherwise does not apply. Id.

### D. Sanctions are Appropriate

Defendant's several discovery violations in this case warrant sanctions. Due to the nature of the violations, the court finds that financial sanctions in the form of attorneys' fees are the appropriate type of sanctions at this juncture.

The parties do not dispute that the appropriate method for computing fees in this case is the lodestar approach, in which the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. Cunningham v. City of Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988). In order to determine the amount of sanctions, plaintiff's counsel must submit to this court a billing statement reflecting the time spent on this discovery dispute for each attorney and paralegal, along with a declaration including their hourly rates.[5] Following this submission the court will issue a separate order on the amount of sanctions owed to plaintiff.

Discovery in this matter closes September 7, 2018. ECF No. 56. Because at this point in the litigation defendant should have completed the necessary review of documents, the court expects defendant to be prepared to make a swift production on an expedited timeline.

No further sanctions are appropriate at this time. However, defendant is cautioned that any further violation of its discovery obligations and/or this court's orders may result in more

---

[5] The court will not honor rates for reimbursement above the common rates in Sacramento, which have previously been set by this court at $350 per hour for attorneys and $75 per hour for paralegals, without a strong showing of good cause. See, Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ., No. 2:11-CV-03471-KJM-AC, 2017 WL 2492850, at *1 (E.D. Cal. June 9, 2017), Orr v. California Highway Patrol, 2015 WL 9305021 at * 4, 2015 U.S. Dist. LEXIS 170862 at *13 (E.D. Cal. 2015) (Shubb, J.); Lin v. Dignity Health, 2014 WL 5698448 at *3, 2014 U.S. Dist. LEXIS 155980 at *7-8 (E.D. Cal. 2014) (Mueller, J.).

serious sanctions, up to and including deeming facts admitted, finding claims of privilege waived and further financial penalties.

## IV. CONCLUSION

Accordingly, for the reasons explained above, plaintiff's motion for sanctions and to enforce this court's discovery order (ECF No. 60) is hereby GRANTED, and it is specifically ORDERED as follows:

1. Defendant's claim of trade secret privilege is overruled;
2. Defendant must produce to plaintiff, within 10 days of this order, all documents ordered produced in this court's order at ECF No. 52, including financial documents and documents related to negotiation and contractual agreements between Safeway and defendant from 2008 and 2009 as specified in this court's prior order, together with a verification that no other responsive documents exist;
3. If defendant wishes to maintain its assertion of attorney-client privilege as to individual documents, it must produce, within 10 days of this order, a privilege log compliant with the Federal Rules of Civil Procedure and this order; and
4. Plaintiff must submit to the court, within 5 days of this order, billing records associated with the need to bring the motion at bar, and accompanying declarations regarding attorney and paralegal rates, so that the court can make a determination regarding the amount of attorneys' fees as sanctions. The determination of fees as sanctions will issue in a separate order following receipt of these documents.

DATED: March 26, 2018.

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE