The Law Office of David J. Hamilton
David J. Hamilton (SBN 117857)
2299 Bowlin Lane
Twin Falls, Idaho 83301-8102
Telephone: (661) 295-3000
Email: dhamilton@hamiltonlaw.biz

Law Offices of Glenn Powell & Associates, LLC
Glenn Powell  (Pro Hac Vice)
49 Sunset Terrace
P.O. Box 74
Collinsville, CT 06022
Telephone: (860) 693-1747
Email: lawofficesofgpowell@comcast.net

Attorney for Defendants

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| ROBERT TERRY, *et al.*, | Case No. 2:16-cv-00806-WBS-AC |
|---|---|
| Plaintiffs, | **DEFENDANTS OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL; DECLARATION OF DAVID J. HAMILTON ATTACHED** |
| vs. | |
| REGISTER TAPES UNLIMITED, INC., *et al.*, | |
| Defendants. | Hearing Date: None |

Defendants object to the following evidence referred to by Plaintiff's counsel in the Amended Declaration of Robert L. Boucher (document no. 101-1) filed with the Court as follows:

| Objectionable Evidence | Basis for Objection |
|---|---|
| Declaration of Robert Boucher, Paragraph 21 (b) [page 8]<br><br>"Defendant's information on 'bad debt' spans only two years (2017 and 2018) and even that information is unclear. (The Protective Order prevents Plaintiff from attaching the documents as exhibits to his motion. Plaintiff will have a true and correct copy of Defendant's document production, RTU 9268-9272, referred to as Exhibit J, for the Court to review at the hearing.)" | The documents to which Mr. Boucher refers – RTU 9268 though 9272 – having nothing whatsoever to do with "bad debt." Those documents are a summary of each commission paid to plaintiffs from March 2017 through December 2018 and were so labeled when produced to Mr. Boucher in January 2019. *See* Declaration of David J. Hamilton attached hereto. |

| Declaration of Robert Boucher, Paragraph 21 (c) [page 8]<br><br>"No information was provided proving costs of tape. But costs of tape seem to be proven at less than the contract's default in RTU 9079, 9129, 9234.<br><br>[These documents were produced to the Court under seal.] | The "cost of tape" is basically fixed. As set out in the October 1999 agreement (Exhibit F to the Second Amended Complaint) the cost of tape is $1.50 per each roll of printed tape and $.94 per roll for each roll of blank tape provided to Safeway.<br><br>There is only one variable on the calculation of the per roll costs: the future cost of thermal paper. In April 2018 – in document no. RTU adv. Terry 04530 – Defendants provided a detailed spreadsheet which included the thermal paper cost increases and decreases from 2009 through 2017.<br><br>Terry's counsel in his declaration conflates the cost of tape with the adjustment for the cost of thermal paper from which the tape is made. He further improperly misrepresents the "cost of tape" by confusing the terms Freedom Media agreed to in October 1999 with the terms of the 2009 agreement between RTU, LP and Safeway. That 2009 agreement – to which no plaintiff was or is a party – set out the terms and conditions under which RTU, LP would provide printed and blank tape to Safeway. It includes a limitation on the amount of tape that would be supplied to Safeway. It further provided if the amount was exceeded, a method of calculating the amount due to RTU, LP from Safeway for excess usage.<br><br>Documents RTU adv. Terry Nos. 9079, 9129, 9234 are related to the amount of tape supplied to Safeway under the 2009 agreement and the calculation of the cost for excess usage. These three pages are part of dozens and dozens of documents produced which discuss the amount of tape provided to Safeway and the calculations for excess usage (none of which were mentioned by Plaintiffs' counsel or provided to the Court).<br><br>The ONLY information relevant to cost adjustment for the price of thermal paper vis a vis the October 1999 agreement with Freedom Media is found in 9079 on the upper left-hand side of the document where there is a notation of RTU's initial cost per thousand square feet for thermal paper (presumably in 2009) and the "current" cost of per thousand square feet of for thermal paper at the time the document was created (presumably in 2011). |

2

Defendants' Objections to Evidence

DATED: May 17, 2019         THE LAW OFFICE OF DAVID J. HAMILTON

By _____
      David J. Hamilton
      Attorney for Defendants

3
Defendants' Objections to Evidence

DATED: May 17, 2019         THE LAW OFFICE OF DAVID J. HAMILTON

By _____
      David J. Hamilton
      Attorney for Defendants

## DECLARATION OF DAVID J. HAMILTON

1. I am over eighteen years of age, the attorney for the defendants in the above-referenced action and otherwise competent to testify in this matter.

2. I am familiar with the documents produced by defendants to plaintiffs in this matter as well as the documents produced by plaintiffs to defendants.

3. In the Amended Declaration of Robert L. Boucher (document no. 101-1), Mr. Boucher states at Paragraph 21 (b) [page 8]:

> Defendant's information on 'bad debt' spans only two years (2017 and 2018) and even that information is unclear. (The Protective Order prevents Plaintiff from attaching the documents as exhibits to his motion. Plaintiff will have a true and correct copy of Defendant's document production, RTU 9268-9272, referred to as Exhibit J, for the Court to review at the hearing.)

This is a false statement. The pages identified as RTU. adv. Terry 9268-9272 have nothing whatsoever to do with "bad debt." Those four pages are a summary of each commission paid to plaintiffs from March 2017 through December 2018 and were so labeled when produced to Mr. Boucher on January 2, 2019. *See* Exhibit 1 attached hereto.

4. These pages were produced as an update to the 125-page spreadsheet produced in March 2018 with respect to plaintiffs' commissions.

5. RTUI has produced substantial information regarding bad debt. On January 3, 2019, I produced seven spreadsheets (RTU adv. Terry 09274 through 09286) relating to bad debt from 2011 through 2017. *See* Exhibit 2 attached hereto. The next day I realized there was some problems with the spreadsheets (they were incomplete) and so informed Mr. Boucher. *See* Exhibit 3 attached hereto. On March 9, 2019, I produced to Mr. Boucher corrected spreadsheets regarding bad debt that covered 2010 through 2018 (RTU adv. Terry 09297 through 09325. *See* Exhibit 4 attached hereto.

6. In the Amended Declaration of Robert L. Boucher (document no. 101-1), Mr. Boucher states at Paragraph 21 (c) [page 8]:

   No information was provided proving costs of tape. But costs of tape seem to be proven at less than the contract's default in RTU 9079, 9129, 9234. [These three pages were produced to the Court under seal.]

This statement is in part false and in part misleading.

7. The basic "cost of tape" is set out in the October 1999 agreement (Exhibit F to the Second Amended Complaint) the cost of tape is $1.50 per each roll of printed tape and $.94 per roll for each roll of blank tape provided to Safeway.

8. There is only one variable on the calculation of the per roll costs: the future cost of thermal paper.

9. In April 2018 – in document no. RTU adv. Terry 04530 – Defendants provided a detailed spreadsheet which included the thermal paper cost increases and decreases from 2009 through 2017.

10. Terry's counsel in his declaration conflates and confuses the cost of a roll of tape pursuant to the October 1999 agreement with the adjustment for the cost of thermal paper from which the tape is made.

11. He further improperly misrepresents the "cost of tape" by confusing the "cost of tape" terms Freedom Media agreed to in October 1999 with the terms of the 2009 agreement between RTU, LP and Safeway to which plaintiffs are not a party.

12. The 2009 RTU-Safeway agreement – to which no plaintiff was or is a party – set out the terms and conditions under which RTU, LP would provide printed and blank tape to Safeway. It includes a limitation on the amount of tape that would be supplied to Safeway (several million rolls per year). It further provided if the amount was exceeded, a method of calculating the amount due to RTU, LP from Safeway for excess usage. This document was produced to Plaintiffs in or about March 2018.

13. The 2000-2003 agreement between RTU, Inc. and Safeway – to which no plaintiff is a party – has similar provisions. Plaintiffs have had a copy of document in their position since it was signed and it was produced to Defendants by Plaintiffs.

14. Documents RTU adv. Terry Nos. 9079, 9129, 9234 are related to the amount of tape

supplied to Safeway under the 2009 RTU-Safeway agreement and the calculation of the cost for *excess* usage. These three pages are part of dozens and dozens of pages of documents consisting of emails and spreadsheets produced to plaintiffs which discuss the amount of tape provided to Safeway and the calculations for *excess* usage. They do not refer to the October 1999 agreement between Freedom Media and RTU, Inc. or the cost of tape provisions in that October 1999 agreement

15. The only information relevant to the cost of tape *vis a vis* the October 1999 agreement with Freedom Media is found in document no. 9079 on the upper left-hand side of the document where there is a notation of RTU's initial cost per thousand square feet for thermal paper (presumably in 2009) and the "current" cost of per thousand square feet of for thermal paper at the time the document was created (presumably in 2011).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration is made this 17th day of May, 2019 at Twin Falls, Idaho.

*David J. Hamilton* (signature)

———————————————
David J. Hamilton

# EXHIBIT 1

# David J. Hamilton

| | |
|---|---|
| **From:** | David J. Hamilton <dhamilton@hamiltonlaw.biz> |
| **Sent:** | Wednesday, January 2, 2019 3:48 PM |
| **To:** | Robert Boucher; Pink |
| **Subject:** | Documents in Response to RFP No. 72 |
| **Attachments:** | Robert Terry - Commissions March 2017 to December 2018.BATES.BATES.PDF |

Dear Mr. Boucher:

Attached in PDF format is a spreadsheet with information regarding Mr. Terry's commissions from March 2017 to December 2018 in response to your RFP No. 72 attached to the Deposition Notice for RTUI's PMQ.

David J. Hamilton

**The Law Office of David J. Hamilton**
**California: (661) 295-3000 (general); (661) 373-6108 (direct)**
**Idaho:  (208) 534-7826 (direct)**

**Mailing Address:**
**2299 Bowlin Lane**
**Twin Falls, Idaho  83301-8102**

**Labor and Employment Law**
**and Related Litigation on**
**Behalf of Management**

**This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and/or confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited.   If you have received this communication in error, please notify us immediately by telephone.**

1

# EXHIBIT 2

**David J. Hamilton**
___

| | |
|---|---|
| **From:** | David J. Hamilton <dhamilton@hamiltonlaw.biz> |
| **Sent:** | Thursday, January 3, 2019 4:29 PM |
| **To:** | Robert Boucher; Pink |
| **Subject:** | "Bad Debt" Information |
| **Attachments:** | Safeway Register Tape Bad Debt 2011.BATES.BATES.PDF; Safeway Register Tape Bad Debt 2012.BATES.BATES.PDF; Safeway Register Tape Bad Debt 2013.BATES.BATES.PDF; Safeway Register Tape Bad Debt 2014.BATES.BATES.PDF; Safeway Register Tape Bad Debt 2015.BATES.BATES.PDF; Safeway Register Tape Bad Debt 2016.BATES.BATES.PDF; Safeway Register Tape Bad Debt 2017.BATES.BATES.PDF |

Dear Mr. Boucher:

Attached in PDF format are documents listing bad debt arising from advertisers failing to pay with regard to advertising placed on Safeway register tape.

A couple of notes:
- I do not have the 2018 numbers yet.
- I do not have the 2010 numbers yet. Because of RTU's structure at the time, they are more difficult to recover;
- I do not have the 2009 numbers for the same reasons as 2010. The bad debt numbers for 2009 should be minimal as the Safeway contract did not take effect until September of that year;
- Finally, I will have my client double check the numbers for 2011 through 2017. I believe that each line item on the attached documents is accurate. However, there may be some line items that were not included which may understate the total by a small amount. For example, Safeway operates stores in Alaska under the "Carrs' banner and there are no "bad debt" listings for Carrs in some years. I will check to see that this was not an oversight.

David J. Hamilton

**The Law Office of David J. Hamilton**
**California: (661) 295-3000 (general); (661) 373-6108 (direct)**
**Idaho:  (208) 534-7826 (direct)**

**Mailing Address:**
**2299 Bowlin Lane**
**Twin Falls, Idaho 83301-8102**

**Labor and Employment Law**
**and Related Litigation on**
**Behalf of Management**

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and/or confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient,

1

you are hereby notified that any dissemination, distribution or copying of this communication is prohibited.   If you have received this communication in error, please notify us immediately by telephone.

# EXHIBIT 3

**David J. Hamilton**

| | |
|---|---|
| **From:** | David J. Hamilton <dhamilton@hamiltonlaw.biz> |
| **Sent:** | Friday, January 4, 2019 9:06 AM |
| **To:** | Robert Boucher |
| **Subject:** | Bad Debt Information -- PROBLEM |

Dear Mr. Boucher:

I was reviewing the spreadsheets I sent you regarding bad debt. There was a problem. With regard to each spreadsheet, it appears when I Bates-stamped them (electronically), only about half the pages in each spreadsheet were stamped and forwarded to you. For example, the 2011 spreadsheet that I sent to you ends on September 8. It should have about 100 additional entries through the end of December. It should also include totals. I have no idea why this occurred, but I will figure it out and send corrected copies later today.

I apologize for the problem.

Dave Hamilton

**The Law Office of David J. Hamilton**
**California: (661) 295-3000 (general); (661) 373-6108 (direct)**
**Idaho: (208) 534-7826 (direct)**

**Mailing Address:**
**2299 Bowlin Lane**
**Twin Falls, Idaho 83301-8102**

**Labor and Employment Law**
**and Related Litigation on**
**Behalf of Management**

**This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and/or confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone.**

# EXHIBIT 4

**David J. Hamilton**

| | |
|---|---|
| **From:** | David J. Hamilton <dhamilton@hamiltonlaw.biz> |
| **Sent:** | Saturday, March 9, 2019 12:56 AM |
| **To:** | Robert Boucher; Pink |
| **Subject:** | Updated Safeway Bad Debt Information 2010-18 |
| **Attachments:** | Safeway Bad Debt 2010-18.BATES.BATES.PDF |

Dear Mr. Boucher:

As promised, attached are updated bad debt numbers for Safeway from 2010 through 2018.

We have been unable to determine amounts, if any, for 2009 at this time. The contract with Safeway did not start until September 2009 and given the lead time from an advertiser signing a contract, to print, to delivery and installation, it is unlikely that there would have been any bad debt (or anything other than a de minimus amount) in 2009.

David Hamilton

**The Law Office of David J. Hamilton**
**California: (661) 295-3000 (general); (661) 373-6108 (direct)**
**Idaho: (208) 534-7826 (direct)**

**Mailing Address:**
**2299 Bowlin Lane**
**Twin Falls, Idaho 83301-8102**

**Labor and Employment Law**
**and Related Litigation on**
**Behalf of Management**

**This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and/or confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone.**