UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT TERRY, et al., | No.  2:16-cv-00806 WBS AC |
| Plaintiffs, | |
| v. | ORDER |
| REGISTER TAPES UNLIMITED, et al., | |
| Defendants. | |

Before the court is plaintiff's motion to compel discovery and for sanctions.  ECF No. 100.  The motion was referred to the undersigned pursuant to Local Rule 302(c)(1) and taken under submission.  Upon review of the Joint Statement and the supporting papers, the motion will be DENIED, for the following reasons.

**I.     Relevant Background**

This matter was removed from California state court on the basis of diversity and federal question jurisdiction on April 19, 2016.  ECF No. 1.  On May 16, 2017, plaintiffs filed a Second Amended Complaint ("SAC"), which is the operative complaint in this matter.  ECF No. 36. According to the SAC, plaintiff Robert Terry was, at all relevant times, an employee of defendant Register Tapes Unlimited, Inc. ("RTUI") and a citizen of California.  ECF No. 36 at 2.  From 1998 to 2004, Terry alleges to have entered into contracts with RTUI to sell advertising space and

1  negotiate grocery store servicing contracts on RTUI's behalf, assign grocery store servicing
2  contracts he had previously obtained to RTUI, and provide sales training to RTUI staff.  Id. at 5-
3  7.  As relevant, an October 1999 written agreement ("1999 Safeway Contract") between plaintiffs
4  and RTUI provided that RTUI would pay plaintiffs 10% of its gross profit, defined as "profit after
5  cost of tape and total paid commissions at 35% fixed.  Tape cost to be calculated presently at
6  $1.50 per roll delivered for printed tape and .94 per roll for blank tape but subject to price
7  fluctuations based on the cost of thermal paper in the future."  ECF No. 36.6 (Ex. F) at 2.
8  Plaintiffs allege that Terry has not been properly compensated under the contracts, and that RTUI
9  has regularly failed or refused to provide proof of profits necessary for plaintiffs to ascertain
10 whether proper payments have been made.  ECF No. 36 at 7-8.
11       In July 2017, plaintiffs filed a motion to compel deposition testimony and to produce a
12 privilege log for all documents withheld from defendant's production and response to plaintiff's
13 requests for production of documents.  ECF No. 47.1 at 2.  The undersigned issued an order on
14 this matter, dated July 28, 2017, holding in part that plaintiffs were entitled to

> information related to [Terry's] potential damages post-2003 (including information related to gross profits, losses, costs, and commissions), information related to negotiations and contractual agreements as to register tapes between Safeway and RTUI post-2003, and information indicating that RTUI was improperly withholding information related to Terry's contractual rights from Terry after 2003.

19 ECF No. 52 at 7.  The parties submitted a stipulated protective order, which the court approved
20 on August 17, 2017.  ECF Nos. 53, 54.
21       On February 20, 2018, plaintiffs filed a motion for sanctions and to enforce the discovery
22 order.  ECF No. 60 at 2.  The court issued an order March 27, 2018, granting the motion for
23 sanctions.  ECF No. 65.  As relevant, the court ordered defendant to produce all documents
24 ordered in the court's July 28, 2017 order (ECF No. 52), "including financial documents and
25 documents related to negotiation and contractual agreements between Safeway and defendant
26 from 2008 and 2009 as specified in this court's prior order.  ECF No. 65 at 9.
27       On May 25, 2018, plaintiffs filed a second discovery-based motion for sanctions, asserting
28 in part that defendant was withholding relevant documents and was making less than a full

1  production of documents.  ECF Nos. 71, 71.1 at 5-8.  On June 29, 2018, the court granted the
2  motion for sanctions based on defendant's failure to produce un-redacted versions of documents
3  containing key financial information and dates, and its deficient privilege log.  ECF No. 78 at 5-
4  10.
5        On October 24, 2018, plaintiffs deposed defendant's CEO, Doug Endsley.  ECF No. 101.1
6  (Am. Decl.) at 3.  The deposition included the following exchange regarding the way in which
7  defendant calculates is profits from Safeway register tape advertisement sales:

> **Q (by plaintiffs' counsel):** Can you tell me what that formula was again?
>
> **A (by Mr. Endsley):** Sure. Sure. Based on the pricing at that time, we were going to charge against the sales, cost of printed and blank tape at $1.50 a roll and .94 a roll for blank. Okay? And the cost of sales [i.e., "commissions"] at 35 percent. And that would come up to, for the purposes of this example, a gross profit number.  Obviously, there's many other expenses in running an operation from gross to net, but for simplicity's sake, that was the formula that we used.
>
> **Q:** Did you track these other expenses such that they could be calculated?
>
> **A:** Well, we calculate bad debt. Okay? We could do a prorated share of administrative costs, you know, G&A overhead. You know, during the period of time from 2000, 2003, we operated an office there in Washington. We didn't charge off any of the expenses involved, the overhead for the remote offices, the administration there.
> We wanted it simple, easy to do, so we did sales less the expenses for tape and -- blank and printed, and cost of sales.

ECF No. 101.2 (Ex. B) at 3-5.

    From this exchange, plaintiffs' counsel understood plaintiffs' potential portion of Safeway sales profits to be derived from the following calculation:  sales – (administrative costs + bad debt + costs of tape + commissions) = "gross profit" to which plaintiff is entitled to 10%.  ECF No. 101.1 at 3.  Accordingly, on November 2, 2018, plaintiffs propounded new requests for production ("RFPs"), requesting financial information to insert into this formula.  Id.  RFP Nos. 78 and 79 requested documents related to "bad debt"; RFP Nos. 80-83 requested documents related to "administrative costs"; RFP No. 84 sought documents "proving the cost of tape"; and RFP No. 86 sought further documents "consisting of sales figures to Safeway stores."  ECF No. 101.4.  Defendant objected to the RFPs on multiple grounds, and refused to produce further documents except for providing a supplemental summary of sales from 2017 to present.  Id.  On

3

April 30, 2019, plaintiffs filed the instant motion to compel.

## II.    Motion

Plaintiffs seek an order compelling defendant to respond to the eight RFPs outlined above, pursuant to Federal Rules of Civil Procedure 34(a) and 37(a)(3)(A); imposing monetary sanctions for attorney's fees; and imposing "issue sanctions" pursuant to Fed. R. Civ. P. 37(b)(2)(A). ECF No. 100. Plaintiffs argue that defendant has violated the court's discovery orders by again failing to produce full financial records and omitting key information needed to prove plaintiffs' damages. ECF No. 102 (Joint Statement) at 5. Specifically, plaintiffs claim to need complete financial documents, from at least 2003 through 2019, for sales, administrative costs, bad debt, and costs of tape. Id. at 6-7. Plaintiffs contend that defendant has not produced "any documents" proving either administrative costs or actual costs of tape; produced "limited proof" of bad debt; and provided "incomplete" sales numbers. ECF No. 102 at 6-7. With respect to sales numbers, plaintiffs refer to two documents previously produced by defendant: a Profit & Loss Summary for 2009 – 2014; and a 125-page spreadsheet with 17,400 entries, covering Safeway register tape contracts from 2010 – 2017. Plaintiffs state that the Profit & Loss Summary "does not equal the totals" plaintiffs' counsel calculated from the 125-page sales spreadsheet, and argues that this discrepancy shows that defendant's production is therefore incomplete. Id. at 5. As for costs of tape, plaintiffs assert that "costs of tape seem to be proven at less than the [1999 Safeway Contract's] default price," perhaps as low as $1.0029 per printed roll and $0.85 per blank roll. ECF Nos. 100 at 3; 101.1 at 8. Pursuant to the court's order, plaintiffs filed under seal documents which they claim support those numbers. ECF No. 105.1. Defendant thereafter filed objections explaining an alternate reading of the documents. ECF No. 106.

Defendant argues that plaintiffs have all the information they require to make a damages calculation and are not entitled to anything further. ECF No. 102 (Joint Statement) at 11. Citing the 1999 Safeway Contract, and the Endsley deposition, defendant argues that the gross profit formula does not include reductions for administrative costs or bad debt, and thus production is unnecessary with respect to these categories. Id. at 7. As to the claim of incomplete sales production, defendant contends that the two sales spreadsheets it already produced, totaling over

4

17,700 entries, "should account for every contract received regarding Safeway." Id. at 9. Defendant explains that the discrepancies between the Profit & Loss Summary and the sales spreadsheet are due to the fact that the Summary was prepared in 2015 purely for purposes of settlement discussions and does not include various adjustments. Id. at 9-10 & n.2.

With respect to both allegedly missing sales data and the cost of tape, defendant asserts that it cannot provide either sales or cost data (a) for 2000 – 2003 because it has "virtually no records for that time frame as almost all such records were lost in a warehouse flood several years ago"; or (b) for 2004 – 2009 because it had no Safeway register tape contracts from December 2003 through September 2009, and thus no "sales or tape usage documents" exist for those years. Id. at 10-11. However, defendants state they are "willing to provide a spreadsheet covering 2009 – 2017 that consolidates all the information for sales, tape provided and cost adjustments." Id. at 10 n.2.

### III.    Analysis

A. Legal Standard for Motion to Compel

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In response to a request for production of documents under Rule 34, a party is to produce all relevant documents in his "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Accordingly, a party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery, National Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 554–56 (N.D. Cal. 1987), and, based on that inquiry, "[a] party responding to a Rule 34 production request . . . 'is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.'" Gray v. Faulkner, 148 F.R.D. 220, 223 (N.D. Ind. 1992) (citation omitted).

Under Rule 37(a), a party may move for an order compelling disclosure or discovery if "a party fails to produce documents . . . as requested under Rule 34." Rule 37(a)(3)(B)(iv). "The party seeking to compel discovery has the burden of establishing that its request satisfies the

relevancy requirements of Rule 26(b)(1). The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." See Bryant v. Ochoa, 2009 U.S. Dist. LEXIS 42339 at *3, 2009 WL 1390794 (S.D. Cal. 2009).

   B.  RFP Nos. 78-83:  Regarding "Bad Debt" and Administrative Costs

The court finds that plaintiffs have not met their burden to show that the documents requested in RFP Nos. 78-83 are relevant to the damages calculation. Having reviewed the portion of the Endsley deposition regarding defendant's calculation of profits, the court finds that the testimony does not support plaintiff's inference that bad debt and administrative costs are incorporated in the formula. Endsley explicitly states that while defendants "calculate bad debt" and "could do a prorated share of administrative costs," they opted to keep the profits formula simple, so "[they] did sales less the expenses for tape . . . blank and printed, and cost of sales [i.e., commissions]." ECF No. 101.2 at 5. Endsley's description of the calculation also matches the description memorialized in the 1999 Safeway Contract. ECF No. 36.6. Accordingly, the motion to compel responses to RFP Nos. 78-83 is denied.

   C.  RFP Nos. 84 & 86:  Regarding Sales Figures & Costs of Tape

While documents regarding sales and costs are certainly relevant to the profits calculation, plaintiffs have not met their burden to establish that defendants possess responsive documents that have not already been produced. The court is unpersuaded that the alleged discrepancies between the totals shown on the 2015 Profit & Loss Summary and the totals calculated by plaintiffs' counsel from the sales spreadsheets indicate incomplete production of sales figures. Defense counsel avers that the sales spreadsheets account for every Safeway-related contract, and the court has found no reason to doubt it.

The court recognizes that discovery has revealed ambiguous and possibly contradictory evidence as to the costs of tape. This may present a problem of proof, but it does not necessarily indicate a failure to produce. Defendant first produced a document apparently summarizing the costs of thermal paper over the years 2009 – 2017 at a hearing before the undersigned on March
////

21, 2018.[1] At the hearing, plaintiff objected that this document was insufficient due to its summary format, unknown provenance, and the lack of supporting invoices. The undersigned suggested that this document might be made sufficient with a sworn declaration as to its accuracy and completeness. (Mar. 21, 2018 hearing, 10:20:27 – 10:23:10). If such a declaration has not previously been provided to plaintiff, defendant will be ordered to do so now.

The additional documents plaintiffs filed under seal to establish what they view to be the actual costs of tape (documents produced to them by defendant) do not lead the court to believe additional documents related to the costs of tape and/or thermal paper are being withheld.

However, in the interest of urging the parties toward a resolution of these discovery issues, the court will order defendant to provide the spreadsheet offered in the Joint Statement, consolidating all information for sales, tape provided, and cost adjustments for 2009 – 2017.

### III.   Conclusion

For the foregoing reasons, the court hereby ORDERS that:

1. Plaintiffs' motion to compel (ECF No. 100) is DENIED; and
2. Defendant shall produce to plaintiffs within 14 days of this order:
    a. a sworn declaration as to the accuracy and completeness of the "highly confidential" document summarizing the costs of thermal paper from 2009 – 2017; and
    b. a spreadsheet covering 2009 – 2017 that consolidates the information for sales, tape provided, and cost adjustments.

IT IS SO ORDERED.

DATED: May 21, 2019

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

[1] While this document was delivered to plaintiff's counsel and described in open court, the undersigned has never viewed the contents of the document.